# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

ROY LEE EDMOND                                                                          PLAINTIFF

v.                                             No. 4:16CV00309 JLH

JAY WINTERS, Director, Arkansas
Crime Information Center;
BRAD CAZORT, Repository Administrator,
Arkansas Sex Offender Registry;
JOHN DOES 1-10, Employees and Officers,
Arkansas Crime Information Center and/or
Arkansas Sex Offender Registry;
KENTON BUCKNER, Chief of Police,
City of Little Rock; STUART THOMAS,
Former Chief of Police, City of Little Rock;
and JANE DOES 1-10, Civilians                                                          DEFENDANTS

## OPINION AND ORDER

Roy Lee Edmond moved to Arkansas from California in 1996.  In 2001, he was directed to

register in Arkansas as a sex offender and did so.  He brings this action pursuant to 42 U.S.C. § 1983

alleging that the defendants violated various protections of the United States Constitution by

requiring him to register as a sex offender under the Arkansas Sex Offender Registration Act, Ark.

Code Ann. § 12-12-901 *et seq.*  Edmond names as defendants Jay Winters, in his individual capacity

as Director of the Arkansas Crime Information Center; Brad Cazort, in his individual capacity as

Repository Administrator of the Arkansas Sex Offender Registry; Kenton Buckner, in his official

and individual capacity as Chief of Police of Little Rock; Stuart Thomas, in his official and

individual capacity as former Chief of Police of Little Rock; and John and Jane Does.  Edmond's

amended complaint alleges that because he completed his sentence before August 1, 1997, Arkansas

law did not require him to register as a sex offender.  *See* Ark. Code Ann. § 12-12-905(a)(1).  He

alleges that the defendants required him to register as a sex offender despite the fact that the law did

not require him to do so.  He also alleges that defendants violated the ex post facto clause of

Article I, the due process clause of the fourteenth amendment, and the penumbral privacy protections

recognized by the Supreme Court in *Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678,

14 L. Ed. 2d 510 (1965), and *Roe v. Wade*, 410 U.S. 113, 93 S. Ct. 705, 35 L. Ed. 2d 147 (1973).[1]

The defendants have filed separate motions to dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Winters and Cazort have jointly filed a motion, and Buckner and Thomas have

jointly filed a separate motion.  In sum, the defendants argue that: (1) Edmond has not adequately

alleged the violation of a constitutional right or protection, and, alternatively, (2) they are protected

by qualified immunity.  For the reasons explained below, the defendants' motions are granted.

Documents #22 and #32.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint

must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must

set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  The Court accepts as true all of the factual

allegations contained in the complaint and draws all reasonable inferences in favor of the nonmoving

party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014).  The complaint must contain

---

[1] In his briefing, Edmond also argues that him being required to register violates the full faith and credit clause of the constitution.

more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. When considering a motion to dismiss under Rule 12(b)(6), a court may not consider materials outside the pleadings other than matters that are incorporated by reference in the pleadings or matters that are subject to judicial notice, such as materials that are part of the public record. *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2013).

In 1988, Edmond was convicted of a felony sexual offense under California Penal Code § 288a(b)(2). Document #20 at ¶¶ 13, 14. A California Superior Court sentenced Edmond to ten months' imprisonment and five years of probation. *Id.* at ¶ 14. Edmond completed this sentence in 1993. *Id.* at ¶ 16. Even though his sentence was completed, California law required Edmond to register as a sex offender. *See* Cal. Penal Code § 290 *et seq.* In 1996, Edmond moved to Arkansas. Document #20 at ¶ 17. The State of Arkansas passed the Sex and Child Registration Act in 1997, now renamed the Arkansas Sex Offender Registration Act. In 2001, Edmond was instructed that he had to register in Arkansas as a sex offender. Document #20 at ¶ 23. On August 12, 2003, a California court granted Edmond relief under California Penal Code § 1203.4, which provides that a guilty verdict be set aside. Document #20 at 17. Before the court set aside Edmond's guilty verdict, a California district attorney notified the court that on January 22, 1996, Edmond had been convicted of violating California Penal Code § 290, which requires any person convicted of a sex offense after July 1, 1944, to register as a sex offender. Document #20 at 15.[2] In April 2016,

---

[2] The document so noting is an exhibit to Edmond's amended complaint, so it can be considered without converting the motion to one for summary judgment.

Edmond petitioned the Circuit Court of Pulaski County, Arkansas, to terminate his obligation to register as a sex offender. That court held that the Act, as applied to Edmond, violated the ex post facto clauses of the United States and Arkansas constitutions. The court, therefore, ordered that Edmond's obligation to register under the Act be terminated.

The Arkansas Sex Offender Registration Act, enacted in 1997, mandates the registration of any person who:

> (1) Is adjudicated guilty on or after August 1, 1997, of a sex offense, aggravated sex offense, or sexually violent offense;

> (2) Is serving a sentence of incarceration, probation, parole, or other form of community supervision as a result of an adjudication of guilt on or after August 1, 1997, for a sex offense, aggravated sex offense, or sexually violent offense;

> (3) Is acquitted on or after August 1, 1997, on the grounds of mental disease or defect for a sex offense, aggravated sex offense, or sexually violent offense;

> (4) Is serving a commitment as a result of an acquittal on or after August 1, 1997, on the grounds of mental disease or defect for a sex offense, aggravated sex offense, or sexually violent offense; or

> (5) Was required to be registered under the Habitual Child Sex Offender Registration Act, former § 12-12-901 et seq.

Ark. Code Ann. § 12-12-905(a). Edmond asserts that because he was convicted before August 1, 1997, the Act did not apply to him, and the defendants should never have required him to register as a sex offender.

Edmond's argument overlooks another section of the Act. The Act also requires registration of "[a] sex offender who moves to or returns to this state from another jurisdiction and who would be required to register as a sex offender in the jurisdiction in which he or she was adjudicated guilty or delinquent of a sex offense." Ark. Code Ann. § 12-12-906(a)(2)(A). Edmond is covered under

the plain language of section 906(a)(2)(A).[3] Before moving to Arkansas, he was adjudicated guilty

of a sex offense in California and would have been required to register as a sex offender in that state,

so he was required to register in Arkansas as a sex offender. *Cf. Williams v. State*, 351 Ark. 229, 91

S.W.3d 68 (2002) (holding that the Arkansas Sex Offender Registration Act applied to a person who

was convicted of a sex offense in Wisconsin in 1992 and required to register as a sex offender there

beginning on or after December 25, 1993).

Edmond nevertheless contends that the Act is unconstitutional as applied to him. He argues

that (1) the Act's application to him constitutes an ex post facto law and a violation of the fourteenth

amendment, and (2) section 906(a)(2)(A)'s application to him would violate the full faith and credit

clause of the United States Constitution. The defendants disagree on both points. In the alternative,

they argue that they are entitled to qualified immunity.

Qualified immunity insulates government officials from liability in their individual capacities

so long as they have not violated clearly established rights of which a reasonable person would have

known. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). "To overcome the defense of qualified

immunity the plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff,

demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly

established at the time of the deprivation." *Id.* (quotation and citation omitted). Edmond is unable

to make either showing.

Edmond has not shown that the facts, viewed favorably to him, demonstrate a deprivation

of his rights. Edmond was convicted of a sex offense in California in 1996, and that conviction

---

[3] It does not appear that this section was brought to the circuit court's attention when that court granted Edmond's motion for termination of his sex offender registration. In fact, no one appeared to oppose the motion. Document #20.

required his registration in California.  He moved to Arkansas in 1996, before the Arkansas Sex

Offender Registration Act was enacted.  In 2001, he was directed to register under the Act.  As

already explained, Edmond's first claim—that the Act does not require his registration—overlooks

section 906(a)(2)(A) of the Act.  His alternative claim—that the Act violates the ex post facto clause,

the fourteenth amendment, and the full faith and credit clause—is equally without merit.

Section 906(a)(2)(A) does not retroactively penalize Edmond for an act that was legal when

committed.  The section merely recognized that Edmond had a current and ongoing status in

California that required his registration in Arkansas. The recognition of this status, and the

consequential registrations requirements, do not present an ex post facto issue.

In 1999, the Arkansas Supreme Court held that the Arkansas Sex Offender Registration Act

is not "a violation of the ex post facto clauses of the United States and Arkansas Constitutions"

because "the Act is essentially regulatory and therefore non-punitive in nature."  *Kellar v.*

*Fayetteville Police Dep't*, 339 Ark. 274, 287, 5 S.W.3d 402, 410 (1999).  In so holding, the court

cited a plethora of decisions from federal and state courts holding that similar statutes were not

punitive and therefore not subject to constitutional prohibitions of ex post facto laws.  *Id*. at 280-82,

5 S.W.3d at 406.  *Kellar* remains the law in Arkansas and it remains the majority view.  *See* William

M. Howard, *Validity of State Sex Offender Registration Laws Under Ex Post Facto Prohibitions*,

63 A.L.R. 6th 351; *see also Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003)

(holding that the Alaska Sex Offender Registration Act is not punitive and therefore did not violate

the ex post facto clause); *Burr v. Snider*, 234 F.3d 1052 (8th Cir. 2000) (holding that the North

Dakota Sex Offender Registration Act is not punitive and does not violate the ex post facto clause).

Though the Eighth Circuit has not reviewed the entirety of the Arkansas Sex Offender Registration

Act, it has held that the Act's residency restrictions do not amount to an unconstitutional ex post facto law because the Arkansas General Assembly  "intended to protect the public safety" and its "purpose . . . was regulatory and non-punitive." *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1017 (8th Cir. 2006).  This reasoning applies with equal force to the registration requirements of sections 905 and 906.  Because the Act's registration requirements are regulatory in nature and not intended to punish offenders, *see Kellar*, 339 Ark. at 287, 5 S.W.3d at 410, sections 905 and 906 are not unconstitutional ex post facto laws.

Edmond also argues that section 906 violates the full faith and credit clause.  He seems to reason that Arkansas is not bound by California registration requirements. *See* Document #40 at 2-3.  But it is Arkansas's registration requirement in section 906 that requires his registration.  Accordingly, Edmond's argument here misses the mark.

Edmond makes other arguments regarding the manner in which his constitutional rights were allegedly violated by the defendants' actions requiring him to register as a sex offender.  Chief among those arguments is his contention that requiring him to register violated his right to privacy.  Suffice it to say that he cites no authority for the proposition that in 2001 the action of the defendants requiring him to register as a sex offender violated his right to privacy or any other constitutional right.

Even if Edmond has shown a deprivation of his rights, he fails to show that the law was clearly established in 2001 when he was directed to register under the Act.  The Supreme Court has explained the "clearly established" prong as follows:

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear

it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 3038-39, 97 L. Ed. 2d 523 (1987) (internal citations omitted). In determining whether a legal right is clearly established, the Eighth Circuit applies a flexible standard, requiring some but not precise factual correspondence with precedent, and demanding that officials apply general, well-developed legal principles. *Coates v. Powell*, 639 F.3d 471, 476 (8th Cir. 2011). "This is a 'fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006)).

Edmond relies on a Sixth Circuit decision, *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), where the court held that the Michigan Sex Offender Registration Act was punitive and violated the ex post facto clause. Assuming that the Arkansas and Michigan statutes are indistinguishable, there is a conflict of authority as to whether the Arkansas Sex Offender Registration Act is punitive and therefore can violate the ex post facto clause.

This Court need not, however, determine whether the Arkansas and Michigan statues are distinguishable nor whether the Arkansas Supreme Court or the Sixth Circuit has correctly interpreted the constitution.  Even if the application of the Arkansas Sex Offender Registration Act to Edmond violated the ex post facto clause, the defendants are entitled to qualified immunity because the right at issue was not clearly established at the time Edmond was required to register as a sex offender in Arkansas.  According to Edmond's amended complaint, he was required to register in Arkansas from 2001 through 2016.  Document #20 at ¶ 23.  The Supreme Court of Arkansas decided *Kellar* in 1999.  The Sixth Circuit did not decide *Snyder* until August 25, 2016.  At the time the defendants required Edmond to register, it was not clearly established that the Arkansas Sex Offender Registration Act, as applied to someone in Edmond's situation, violated the ex post facto clause.  To state the same point conversely, in 2001 it was objectively reasonable for the defendants to rely on *Kellar* as authority and, therefore, to require Edmond to register.

The defendants are entitled to qualified immunity even if Edmond is correct in his legal arguments that they should not have required him to register as a sex offender.

## CONCLUSION

The defendants' motions to dismiss are GRANTED.  Documents #22 and #32.  The complaint of Roy Lee Edmond is dismissed with prejudice.

IT IS SO ORDERED this 22nd day of December, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

9